IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
CEDAR RAPIDS DIVISION

VALERIE D. FERDINAND,

    Plaintiff,

vs.

CAROLYN W. COLVIN,
Commissioner of Social Security,

    Defendant.

No. C14-0054

RULING ON JUDICIAL REVIEW

## TABLE OF CONTENTS

I.   INTRODUCTION ................................... 2

II.  PRINCIPLES OF REVIEW ............................ 2

III. FACTS ........................................... 4
    A.  Ferdinand's Education and Employment Background .......... 4
    B.  Administrative Hearing Testimony .................... 4
        1.  Ferdinand's Testimony ....................... 4
        2.  Vocational Expert's Testimony ................. 5
    C.  Ferdinand's Medical History ....................... 7

IV. CONCLUSIONS OF LAW .............................. 9
    A.  ALJ's Disability Determination ..................... 9
    B.  Objections Raised By Claimant ..................... 11
        1.  Dr. Lips' Opinions ........................ 11
        2.  Credibility Determination .................... 14
        3.  Hypothetical Question ...................... 17

V.  CONCLUSION ................................... 18

VI. ORDER ........................................ 18

## I. INTRODUCTION

This matter comes before the Court on the Complaint (docket number 5) filed by Plaintiff Valerie D. Ferdinand on April 24, 2014, requesting judicial review of the Social Security Commissioner's decision to deny her Title II disability insurance benefits.[1] Ferdinand asks the Court to reverse the decision of the Social Security Commissioner ("Commissioner") and order the Commissioner to provide her disability insurance benefits. In the alternative, Ferdinand requests the Court to remand this matter for further proceedings.

## II. PRINCIPLES OF REVIEW

Title 42, United States Code, Section 405(g) provides that the Commissioner's final determination following an administrative hearing not to award disability insurance benefits is subject to judicial review. 42 U.S.C. § 405(g). 42 U.S.C. § 405(g) provides the Court with the power to: "[E]nter . . . a judgment affirming, modifying, or reversing the decision of the Commissioner . . . with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). "The findings of the Commissioner . . . as to any fact, if supported by substantial evidence, shall be conclusive . . ." *Id.*

The Court will "affirm the Commissioner's decision if supported by substantial evidence on the record as a whole." *Anderson v. Astrue*, 696 F.3d 790, 793 (8th Cir. 2012) (citation omitted). Substantial evidence is defined as "'less than a preponderance but . . . enough that a reasonable mind would find it adequate to support the conclusion.'" *Id.* (quoting *Jones v. Astrue*, 619 F.3d 963, 968 (8th Cir. 2010)); *see also Brock v. Astrue*, 674 F.3d 1062, 1063 (8th Cir. 2010) ("Substantial evidence is evidence that a reasonable person might accept as adequate to support a decision but is less than a preponderance.").

---

[1] On May 20, 2014, both parties consented to proceed before a magistrate judge in this matter pursuant to the provisions set forth in 28 U.S.C. § 636(c).

2

In determining whether the ALJ's decision meets this standard, the Court considers "all of the evidence that was before the ALJ, but it [does] not re-weigh the evidence." *Vester v. Barnhart*, 416 F.3d 886, 889 (8th Cir. 2005) (citation omitted). The Court not only considers the evidence which supports the ALJ's decision, but also the evidence that detracts from his or her decision. *Perks v. Astrue*, 687 F.3d 1086, 1091 (8th Cir. 2012); *see also Cox v. Astrue*, 495 F.3d 614, 617 (8th Cir. 2007) (Review of an ALJ's decision "extends beyond examining the record to find substantial evidence in support of the ALJ's decision; [the court must also] consider evidence in the record that fairly detracts from that decision."). In *Culbertson v. Shalala*, 30 F.3d 934, 939 (8th Cir. 1994), the Eighth Circuit Court of Appeals explained this standard as follows:

> This standard is 'something less than the weight of the evidence and it allows for the possibility of drawing two inconsistent conclusions, thus it embodies a zone of choice within which the [Commissioner] may decide to grant or deny benefits without being subject to reversal on appeal.'

*Id.* (quoting *Turley v. Sullivan*, 939 F.2d 524, 528 (8th Cir. 1991), in turn quoting *Bland v. Bowen*, 861 F.2d 533, 535 (8th Cir. 1988)). In *Buckner v. Astrue*, 646 F.3d 549 (8th Cir. 2011), the Eighth Circuit further explained that a court "'will not disturb the denial of benefits so long as the ALJ's decision falls within the available 'zone of choice.'" *Id.* at 556 (quoting *Bradley v. Astrue*, 528 F.3d 1113, 1115 (8th Cir. 2008)). "'An ALJ's decision is not outside that zone of choice simply because [a court] might have reached a different conclusion had [the court] been the initial finder of fact.'" *Id.* Therefore, "even if inconsistent conclusions may be drawn from the evidence, the agency's decision will be upheld if it is supported by substantial evidence on the record as a whole." *Guilliams v. Barnhart*, 393 F.3d 798, 801 (8th Cir. 2005) (citing *Chamberlain v. Shalala*, 47 F.3d 1489, 1493 (8th Cir. 1995)); *see also Wildman v. Astrue*, 596 F.3d 959, 964 (8th Cir. 2010) ("If substantial evidence supports the ALJ's decision, we will not reverse the decision merely because substantial evidence would have also supported a contrary

outcome, or because we would have decided differently."); *Moore v. Astrue*, 572 F.3d 520, 522 (8th Cir. 2009) ("'If there is substantial evidence to support the Commissioner's conclusion, we may not reverse even though there may also be substantial evidence to support the opposite conclusion.' *Clay v. Barnhart*, 417 F.3d 922, 928 (8th Cir. 2005).").

## III. FACTS

### A. Ferdinand's Education and Employment Background

Ferdinand was born in 1961. At the administrative hearing, Ferdinand testified that she completed the tenth grade, but was "kicked out" of school while she was in the eleventh grade. In the past, Ferdinand worked in the area of patient registration at a hospital, as an administrative assistant, and as a certified nursing assistant.

### B. Administrative Hearing Testimony

#### 1. Ferdinand's Testimony

At the administrative hearing, the ALJ inquired about Ferdinand's impairments. Ferdinand discussed auditory hallucinations:

> Well I just hear, first it would be like noises and you know, like I'm looking around like I know I heard that and I'm looking to see if anybody else heard it. And then I would hear the noises that would tell me to just do it, just do it. And I'm so sad a lot of the time that to do it means to just go ahead and just kill yourself. Things are just not good anyway, so just go ahead and do it. Those are the noises that I hear the voices out here, just do it. Just do it, just go ahead and just kill yourself.

(Administrative Record at 52.) Ferdinand indicated that recently her auditory hallucinations had gotten better with medication. Specifically, she stated that the frequency of the hallucinations had decreased, and they were also softer and less noisy. According to Ferdinand, even though she was taking medication for the hallucinations, she was not taking it as prescribed because she wanted to "conserve" the medication.

Next, Ferdinand testified that she has difficulty sleeping due to her mental health problems. She stated that she averages only about five hours of sleep per night. The lack

4

of sleep makes her tired the next day. She also indicated that she has difficulty with concentrating and remembering things. Ferdinand also testified that she prefers not to go out in public. For example, she only goes to the grocery store once or twice per month, usually in the early morning.

Lastly, Ferdinand's attorney asked Ferdinand whether she had any other information she would like to tell the ALJ:

> There's a lot that happened during my life and I'm not making any excuses I'm just like giving an explanation. I was a product of a -- my mother's boyfriend abused me when I was 12. And that was the first time when I tried to commit suicide. This was right after I got shot at 11 and he took advantage of the fact that I could not talk. You know and when I told my mom that what he was doing, he said that he wasn't doing it and it just went on and on until I was 14 when he started penetrating and then I got pregnant. And then I got, I tried to commit suicide again at the age of 18. And then you know the rest, 26 again was the last time. So it's not like I chose to have a life that seems so screwed up mentally, you know, not at all. I wish things were different for me mentally, you know. I want to have a productive life. I know, you know, this is not normal for me. So but I don't want to be stuck between the cracks, you know, where I don't get the help that I need. And I'm just shoved aside. That's all.

(Administrative Record at 64-65.)

### 2. *Vocational Expert's Testimony*

At the hearing, the ALJ provided vocational expert Vanessa May with a hypothetical for an individual who:

> has no exertional limitations but needs to avoid exposure to hazardous conditions such as moving machinery, unprotected heights and so forth. This person can perform simple, routine tasks and should probably work in environments where there are few workplace changes, in other words, pretty routine, simple tasks that are repetitive in nature. Should not be required to work at a production rate pace and can have

5

> occasional interaction with the public, co-workers, and supervisors. Occasional, I'm using that term as defined in the DOT but let's just say with respect to co-workers and the public, not a lot of direct interaction or working together as part of a team.

(Administrative Record at 71.) The vocational expert testified that under such limitations, Ferdinand could not perform her past relevant work. The vocational expert testified, however, that Ferdinand could perform the following jobs: (1) retail marker, (2) mail clerk, and (3) laundry sorter.

Ferdinand's attorney also questioned the vocational expert:

> Q: . . . If you added to the first hypothetical that the person would be off task 20 percent of the work day due to various symptoms related to mental health conditions, would that person be precluded from maintaining any of those positions or would the numbers be reduced at all?
> A: No, I don't believe that person would be able to keep the jobs. That would not be consistent with competitive employment. . . .
> Q: Okay. And then if you were to add to the first hypothetical that the person would be absent two or more days a month due to similar symptoms, would that person be precluded from maintaining the employment?
> A: Yes. . . .
> Q: Okay and if someone were to be noted to have difficulty remembering and understanding simple instructions, procedures, and locations, would be unable to maintain concentration and pace, would have difficulty interacting with others, and would be stressed by any expectation to make independent decisions in a work place setting and would [need] time and support in order to adjust to changes in the work place. Would that person be able to maintain those jobs or would they need accommodated employment of some sort?
> A: Well with unskilled work, you know, you would expect that there would be few changes but if someone is, you

> know, unable to concentrate on the simple tasks and needs additional support in, you know, making that they're able to complete the tasks, then I would say that would not rise to competitive employment.

(Administrative Record at 72-74.)

## C. Ferdinand's Medical History

On April 13, 2012, Ferdinand entered the Elgin Mental Health Center in Elgin, Illinois, complaining of depression. Dr. Eva Kurilo performed a comprehensive psychiatric evaluation for Ferdinand. In reviewing Ferdinand's medical history, Dr. Kurilo noted that:

> [Ferdinand] has a long history of recurrent depression. She was physically and sexually abused when she was a kid by her step-dad. She had one suicidal attempt at the age of 12. She was into drugs when she was a teenager and was snorting heroin, was in a rehab program, and discontinued a number of years ago. [Ferdinand] reports that she had recurrence of her depression in 2006 after she had [a] hysterectomy for fibroid tumors. . . . She reports that she overdosed on some of her medications and was admitted to psychiatric unit and treated with Effexor, but discontinued for unknown reason. She has been under a lot of stress the last few months, has been having marital problems. Found out her husband was cheating on her last October and reports that she has not been able to function well ever since. She quit her job. She has been having problems concentrating, fluctuating energy level, not sleeping well, feeling hopeless, helpless. . . . Reportedly found her husband leaving her house with another woman on the day of her admission. She started to have a lot of somatic symptoms, heart palpitations, chest pains, and went to the emergency room for evaluation[.] . . . The arrangements were made for admission to Elgin Mental Health Center. . . . She tested positive for cocaine, as well as amphetamines on admission to the emergency room. She claims she was smoking some cocaine to deal with the stress associated with her recent diagnosis of gonorrhea and her husband's cheating. She denies using any drugs on a regular basis. She also reports

7

> that she is not a drinker. As we talked today, she was sad,
> anxious, but not suicidal, not homicidal, and not psychotic.

(Administrative Record at 402.) Upon examination, Dr. Kurilo diagnosed Ferdinand with major depression and opiate dependence in full sustained remission. Dr. Kurilo assessed a GAF score of 40 for Ferdinand. Dr. Kurilo recommended medications and substance abuse counseling as treatment.

On May 28, 2013, Ferdinand was referred by Disability Determination Services to Dr. Barbara J. Lips, Ph.D., for a psychological evaluation. Dr. Lips described Ferdinand's typical day as follows:

> She spends her time "pretty much alone." She will get up, eat
> something, pick up a little bit, watch a little TV, and walk
> over to her son's house to see if she can help with his kids.

(Administrative Record at 518.) Ferdinand indicated that she was capable of managing her personal hygiene and performing basic housekeeping tasks. She stated that she needs help with grocery shopping because she "forgets" a lot. Lastly, she reported that she only goes to places within walking distance of her residence, and denied the ability to drive or use public transportation. Upon examination, Dr. Lips diagnosed Ferdinand with bipolar disorder, major depressive disorder, and generalized anxiety disorder. Dr. Lips assessed a GAF score of 50 for Ferdinand. Dr. Lips concluded that:

> [Ferdinand] would have difficulty remembering and
> understanding simple instructions, procedures, and locations,
> although she could do so if given sufficient time and support.
> She would not be able to maintain attention, concentration, and
> pace in order to carry out simple instructions at the level of
> expectation in a competitive work setting. She would have
> difficulty interacting appropriately with supervisors,
> coworkers, and the public. She would be stressed by any
> expectation to make independent decisions in a workplace
> setting, and she would need time and support in order to adjust
> to changes in the workplace.

(Administrative Record at 519.)

## IV. CONCLUSIONS OF LAW

### A. ALJ's Disability Determination

The ALJ determined that Ferdinand is not disabled. In making this determination, the ALJ was required to complete the five-step sequential test provided in the social security regulations. *See* 20 C.F.R. § 404.1520(a)-(g); *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987); *McCoy v. Astrue*, 648 F.3d 605, 611 (8th Cir. 2011); *Page v. Astrue*, 484 F.3d 1040, 1042 (8th Cir. 2007). The five steps an ALJ must consider are:

> (1) whether the claimant is gainfully employed, (2) whether the claimant has a severe impairment, (3) whether the impairment meets the criteria of any Social Security Income listings, (4) whether the impairment prevents the claimant from performing past relevant work, and (5) whether the impairment necessarily prevents the claimant from doing any other work.

*Goff v. Barnhart*, 421 F.3d 785, 790 (8th Cir. 2005) (citing *Eichelberger*, 390 F.3d at 590); *Perks*, 687 F.3d at 1091-92 (discussing the five-step sequential evaluation process); *Medhaug v. Astrue*, 578 F.3d 805, 813-14 (8th Cir. 2009) (same); *see also* 20 C.F.R. § 404.1520(a)-(g). "If a claimant fails to meet the criteria at any step in the evaluation of disability, the process ends and the claimant is determined to be not disabled." *Pelkey v. Barnhart*, 433 F.3d 575, 577 (8th Cir. 2006) (citing *Goff*, 421 F.3d at 790, in turn quoting *Eichelberger*, 390 F.3d at 590-91).

In considering the steps in the five-step process, the ALJ:

> first determines if the claimant engaged in substantial gainful activity. If so, the claimant is not disabled. Second, the ALJ determines whether the claimant has a severe medical impairment that has lasted, or is expected to last, at least 12 months. Third, the ALJ considers the severity of the impairment, specifically whether it meets or equals one of the listed impairments. If the ALJ finds a severe impairment that meets the duration requirement, and meets or equals a listed impairment, then the claimant is disabled. However, the

9

fourth step asks whether the claimant has the residual functional capacity to do past relevant work. If so, the claimant is not disabled. Fifth, the ALJ determines whether the claimant can perform other jobs in the economy. If so, the claimant is not disabled.

*Kluesner v. Astrue*, 607 F.3d 533, 537 (8th Cir. 2010). At the fourth step, the claimant "bears the burden of demonstrating an inability to return to [his] or her past relevant work." *Pate-Fires v. Astrue*, 564 F.3d 935, 942 (8th Cir. 2009) (citing *Steed v. Astrue*, 524 F.3d 872, 875 n.3 (8th Cir. 2008)). If the claimant meets this burden, the burden shifts to the Commissioner at step five to demonstrate that "given [the claimant's] RFC [(residual functional capacity)], age, education, and work experience, there [are] a significant number of other jobs in the national economy that [the claimant] could perform." *Brock*, 674 F.3d at 1064 (citing *Ellis v. Barnhart*, 392 F.3d 988, 993 (8th Cir. 2005)). The RFC is the most an individual can do despite the combined effect of all of his or her credible limitations. 20 C.F.R. § 404.1545. The ALJ bears the responsibility for determining "'a claimant's RFC based on all the relevant evidence including the medical records, observations of treating physicians and others, and an individual's own description of his [or her] limitations.'" *Boettcher v. Astrue*, 652 F.3d 860, 867 (8th Cir. 2011) (quoting *Moore*, 572 F.3d at 523); 20 C.F.R. § 404.1545.

The ALJ applied the first step of the analysis and determined that Ferdinand had not engaged in substantial gainful activity since October 15, 2010. At the second step, the ALJ determined that prior to April 2012, "there was insufficient medical evidence to support a finding that [Ferdinand] had any severe impairments."[2] However, from April 2012 to the present, the ALJ concluded from the medical evidence that Ferdinand has the following severe impairments: major depressive disorder, anxiety, psychotic features, and substance abuse history in remission. At the third step, the ALJ found that Ferdinand did

---

[2] Administrative Record at 22.

not have an impairment or combination of impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. At the fourth step, the ALJ determined Ferdinand's RFC as follows:

> [Ferdinand] has the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: She needs to avoid exposure to hazardous conditions such as moving machinery, unprotected heights, and so forth. Further, she can perform simple and routine tasks, and she should work in an environment where there are few workplace changes. In other words, pretty routine, simple tasks that are of a repetitive nature. In addition, she should not be required to work at a production rate pace, and she can have occasional interaction with the public, co-workers and supervisors. As such, she would not have a lot of direct interaction, or a lot of working together as part of a team, with the public or co-workers.

(Administrative Record at 25.) Also at the fourth step, the ALJ determined that Ferdinand was unable to perform any of her past relevant work. At the fifth step, the ALJ determined that based on her age, education, previous work experience, and RFC, Ferdinand could work at jobs that exist in significant numbers in the national economy. Therefore, the ALJ concluded that Ferdinand was not disabled.

### B. Objections Raised By Claimant

Ferdinand argues that the ALJ erred in three respects. First, Ferdinand argues that the ALJ failed to properly consider the opinions of her consultative examining psychologist, Dr. Lips. Second, Ferdinand argues that the ALJ failed to properly evaluate her subjective allegations of disability. Lastly, Ferdinand argues that the ALJ provided a flawed hypothetical question to the vocational expert at the administrative hearing.

#### 1. Dr. Lips' Opinions

Ferdinand argues that the ALJ failed to properly evaluate the opinions of her consultative examining psychologist, Dr. Lips. Specifically, Ferdinand argues that the ALJ's reasons for discounting Dr. Lips' opinions are not supported by substantial evidence

in the record. Ferdinand concludes that this matter should be remanded for calculation of benefits; or in the alternative, remanded for further consideration of Dr. Lips' opinions.

An ALJ is required to evaluate every medical opinion he or she receives from a claimant. 20 C.F.R. § 404.1527(d). If the medical opinion is not from a treating source, then the ALJ considers the following factors for determining the weight to be given to the non-treating medical opinion: "(1) examining relationship, (2) treating relationship, (3) supportability, (4) consistency, (5) specialization, and (6) other factors." *Wiese*, 552 F.3d at 731 (citing 20 C.F.R. §§ 404.1527(d)). "'It is the ALJ's function to resolve conflicts among the opinions of various treating and examining physicians. The ALJ may reject the conclusions of any medical expert, whether hired by the claimant or the government, if they are inconsistent with the record as a whole.'" *Wagner*, 499 F.3d at 848 (quoting *Pearsall v. Massanari*, 274 F.3d 1211, 1219 (8th Cir. 2001)).

The ALJ addressed Dr. Lips' opinions as follows:

> Further, in May 2013, Barbara Lips, Ph.D. performed a consultative examination. Dr. Lips diagnosed [Ferdinand] with bipolar disorder, NOS; major depressive disorder, recurrent severe with psychotic features; and generalized anxiety disorder. In pertinent part, Dr. Lips also opined that [Ferdinand] would have difficulty remembering and understanding simple instructions, procedures, and locations, although she could do so if given sufficient time and support. In addition, it was assumed that [Ferdinand] would not be able to maintain attention, concentration, and pace in order to carry out simple instructions at the level of expectation in a competitive work setting. The undersigned finds that these conclusions were generally inconsistent with the objective medical evidence and were most likely the product of [Ferdinand's] self-reporting. For example, [Ferdinand] indeed had some problems with attentiveness, but was alert, cooperative, and adequately oriented. She was a bit "jangly," fretful, and tearful, but coherent and logical. She was correct on simple problem-solving, and otherwise managed adequately with more simple mental status tests. Again, the undersigned

12

> notes that [Ferdinand's] medical evidence was extremely minimal, and the records that were provided, identified that [she] was oriented, her concentration, [] mood and affect were all described as fair, and her thought process was within normal limits. (Exhibit 4F/12). Moreover, during Dr. Muhammad's consultative examination in December 2012, it was referenced that [Ferdinand's] affect was normal and there were no signs of depression, agitation, irritability or anxiety (Exhibit 5F). Therefore, because of these inconsistencies, the undersigned assigns Dr. Lips [(sic)] opinion little weight.

(Administrative Record at 27.)

Having reviewed the entire record, the Court finds the ALJ properly considered and addressed the opinion evidence provided by Dr. Lips, a one-time consultative examining psychologist. In particular, and contrary to Ferdinand's assertion that the ALJ did not fully and fairly consider Dr. Lips' assessment of her functional limitations, the ALJ actually included some of Dr. Lips' limitations in his RFC assessment for Ferdinand. For example, the ALJ's RFC limits Ferdinand to performing simple, routine tasks; working in an environment with minimal workplace changes; not working at a production rate pace; and having occasional interaction with the public, co-workers, and supervisors.[3] Furthermore, the Court finds the ALJ provided "good reasons" for rejecting the portions of Dr. Lips' opinions that she found to be inconsistent with the record as a whole. *See Strongson*, 361 F.3d at 1070; *Edwards*, 314 F.3d at 967. Accordingly, even if inconsistent conclusions could be drawn on this issue, the court upholds the conclusions of the ALJ because they are supported by substantial evidence on the record as a whole. *Guilliams*, 393 F.3d at 301.

---

[3] *Compare* Administrative Record at 25 (ALJ's RFC assessment) with Administrative Record at 516-520 (Dr. Lips' evaluation).

## 2. Credibility Determination

Ferdinand argues that the ALJ failed to properly evaluate her subjective allegations of disability. Ferdinand maintains that the ALJ's credibility determination is not supported by substantial evidence. The Commissioner argues that the ALJ properly considered Ferdinand's testimony, and properly evaluated the credibility of her subjective complaints.

When assessing a claimant's credibility, "[t]he [ALJ] must give full consideration to all the evidence presented relating to subjective complaints, including the claimant's prior work record, and observations by third parties and treating and examining physicians relating to such matters as: (1) the claimant's daily activities; (2) the duration, frequency, and intensity of the pain; (3) precipitating and aggravating factors; (4) dosage, effectiveness and side effects of medication; [and] (5) functional restrictions." *Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984). An ALJ should also consider a "a claimant's work history and the absence of objective medical evidence to support the claimant's complaints[.]" *Finch v. Astrue*, 547 F.3d 933, 935 (8th Cir. 2008) (citing *Wheeler v. Apfel*, 224 F.3d 891, 895 (8th Cir. 2000)). The ALJ, however, may not disregard a claimant's subjective complaints "'solely because the objective medical evidence does not fully support them.'" *Renstrom v. Astrue*, 680 F.3d 1057, 1066 (8th Cir. 2012) (quoting *Wiese v. Astrue*, 552 F.3d 728, 733 (8th Cir. 2009)).

Instead, an ALJ may discount a claimant's subjective complaints "if there are inconsistencies in the record as a whole." *Wildman*, 596 F.3d at 968; *see also Finch*, 547 F.3d at 935 (same); *Lowe v. Apfel*, 226 F.3d 969, 972 (8th Cir. 2000) ("The ALJ may not discount a claimant's complaints solely because they are not fully supported by the objective medical evidence, but the complaints may be discounted based on inconsistencies in the record as a whole."). If an ALJ discounts a claimant's subjective complaints, he or she is required to "'make an express credibility determination, detailing the reasons for discounting the testimony, setting forth the inconsistencies, and discussing the Polaski

factors.'" *Renstrom*, 680 F.3d at 1066 (quoting *Dipple v. Astrue*, 601 F.3d 833, 837 (8th Cir. 2010)); *see also Ford*, 518 F.3d at 982 (An ALJ is "required to 'detail the reasons for discrediting the testimony and set forth the inconsistencies found.' *Lewis v. Barnhart*, 353 F.3d 642, 647 (8th Cir. 2003)."). Where an ALJ seriously considers, but for good reason explicitly discredits a claimant's subjective complaints, the Court will not disturb the ALJ's credibility determination. *Johnson v. Apfel*, 240 F.3d 1145, 1148 (8th Cir. 2001) (citing *Pena v. Chater*, 76 F.3d 906, 908 (8th Cir. 1996)); *see also Schultz v. Astrue*, 479 F.3d 979, 983 (8th Cir. 2007) (providing that deference is given to an ALJ when the ALJ explicitly discredits a claimant's testimony and gives good reason for doing so); *Gregg v. Barnhart*, 354 F.3d 710, 714 (8th Cir. 2003) ("If an ALJ explicitly discredits the claimant's testimony and gives good reasons for doing so, we will normally defer to the ALJ's credibility determination."). "'The credibility of a claimant's subjective testimony is primarily for the ALJ to decide, not the courts.'" *Vossen v. Astrue*, 612 F.3d 1011, 1017 (8th Cir. 2010) (quoting *Pearsall v. Massanari*, 274 F.3d 1211, 1218 (8th Cir. 2001)).

In his decision, the ALJ determined that:

> Upon review of the medical evidence, the objective findings in this case fail to provide strong support for [Ferdinand's] allegations of disabling limitations. More specifically, the medical findings do not support the existence of limitations greater than the above listed residual functional capacity.

(Administrative Record at 26.) In his decision, the ALJ proceeded to discuss the portions of the medical evidence in the record that were inconsistent with Ferdinand's subjective allegations.[4] For example, the ALJ points out that when admitted to a mental health center for treatment in May 2012, Ferdinand was identified as "low risk." Moreover, in June

---

[4] *See* Administrative Record at 26-28 (ALJ's discussion of the medical evidence in the record).

2012, after treatment, Ferdinand was found to be "oriented, her concentration, mood and affect were described as fair, and her thought process was within normal limits."[5] The ALJ further addressed Ferdinand's subjective allegations as follows:

> Although [Ferdinand] described disabling symptoms as a result of her medical impairments, the record is not consistent with that conclusion. As stated previously, [Ferdinand] described activities of daily living that are not limited to the extent one would expect, given the complaints of disabling symptoms and limitations. . . .
>
> In sum, the above residual functional capacity is supported by the objective medical evidence contained in the record. Treatment notes in the record do not sustain [Ferdinand's] subjective allegations. . . . The credibility of [Ferdinand's] allegations is weakened by evidence of diverse daily activities and inconsistencies between [her] testimony and the medical records for the relevant period. [Ferdinand] did experience some level of limitations, but only to the extent described in the residual functional capacity.

(Administrative Record at 28-29.)

It is clear from the ALJ's decision that he thoroughly considered and discussed Ferdinand's treatment history, medical history, functional abilities, and activities of daily living in making his credibility determination. Thus, having reviewed the entire record, the Court finds that the ALJ adequately considered and addressed the *Polaski* factors in determining that Ferdinand's subjective allegations of disability were not credible. *See Johnson*, 240 F.3d at 1148; *see also Goff*, 421 F.3d at 791 (an ALJ is not required to explicitly discuss each *Polaski* factor, it is sufficient if the ALJ acknowledges and considers those factors before discounting a claimant's subjective complaints); *Tucker v. Barnhart*, 363 F.3d 781, 783 (8th Cir. 2004) ("The ALJ is not required to discuss each *Polaski* factor as long as the analytical framework is recognized and considered. *Brown*

---

[5] Administrative Record at 26.

*v. Chater*, 87 F.3d 963, 966 (8th Cir. 1996).")· Accordingly, because the ALJ seriously considered, but for good reasons explicitly discredited Ferdinand's subjective complaints, the Court will not disturb the ALJ's credibility determination. *See Johnson*, 240 F.3d at 1148. Even if inconsistent conclusions could be drawn on this issue, the Court upholds the conclusions of the ALJ because they are supported by substantial evidence on the record as a whole. *Guilliams*, 393 F.3d at 801.

### 3. Hypothetical Question

Ferdinand argues that the ALJ's hypothetical question to the vocational expert was incomplete because it did not properly account for all of her impairments. Ferdinand also argues that the ALJ's hypothetical was incomplete and did not contemplate all of her functional limitations. Ferdinand maintains that this matter should be remanded so that the ALJ may provide the vocational expert with a proper and complete hypothetical question.

Hypothetical questions posed to a vocational expert, including a claimant's RFC, must set forth his or her physical and mental impairments. *Goff*, 421 F.3d at 794. "The hypothetical question must capture the concrete consequences of the claimant's deficiencies." *Hunt v. Massanari*, 250 F.3d 622, 625 (8th Cir. 2001) (citing *Taylor v. Chater*, 118 F.3d 1274, 1278 (8th Cir. 1997)). The ALJ is required to include only those impairments which are substantially supported by the record as a whole. *Goose v. Apfel*, 238 F.3d 981, 985 (8th Cir. 2001); *see also Haggard v. Apfel*, 201 F.3d 591, 595 (8th Cir. 1999) ("A hypothetical question 'is sufficient if it sets forth the impairments which are accepted as true by the ALJ.' *See Davis v. Shalala*, 31 F.3d 753, 755 (8th Cir. 1994) (quoting *Roberts v. Heckler*, 783 F.2d 110, 112 (8th Cir. 1985).").

Having reviewed the entire record, the Court finds that the ALJ thoroughly considered and discussed both the medical evidence and Ferdinand's testimony in

determining Ferdinand's impairments.[6] The Court further determines that the ALJ's findings and conclusions are supported by substantial evidence on the record as a whole. Because the hypothetical question posed to the vocational expert by the ALJ was based on the ALJ's findings and conclusions, the Court concludes that the ALJ's hypothetical question properly included those impairments which were substantially supported by the record as a whole. *See Goose*, 238 F.3d at 985; *see also Forte v. Barnhart*, 377 F.3d 892, 897 (8th Cir. 2004) (an ALJ need only include those work-related limitations that he or she finds credible). Therefore, the ALJ's hypothetical question was sufficient.

## V. CONCLUSION

The Court finds that the ALJ properly considered the medical evidence and opinions in the record, including the opinions of Dr. Lips. The ALJ also properly determined Ferdinand's credibility with regard to her subjective complaints of disability. Lastly, the ALJ's hypothetical question to the vocational expert properly included those impairments substantially supported by the record as a whole. Accordingly, the Court determines that the ALJ's decision is supported by substantial evidence and shall be affirmed.

## VI. ORDER

1. The final decision of the Commissioner of Social Security is **AFFIRMED**;
2. Plaintiff's Complaint (docket number 5) is **DISMISSED** with prejudice; and
3. The Clerk of Court is directed to enter judgment accordingly.

DATED this 16th day of January, 2015.

JON STUART SCOLES
CHIEF MAGISTRATE JUDGE
NORTHERN DISTRICT OF IOWA

---

[6] *See* Administrative Record at 25-29.